UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE: BILLY MCCOLLUM                    CIVIL ACTION

                                         NO. 06-2137

                                         SECTION: R(5)


### ORDER AND REASONS

Appellant, Chapter 13 Trustee S. J. Beaulieu, Jr., appeals the bankruptcy court's February 22, 2006 order permitting the debtor, Billy McCollum, to sell his home, retain $25,000 of the proceeds as subject to the Louisiana homestead exemption, and receive an early discharge.  For the following reasons, the Court AFFIRMS the bankruptcy judge's decision.


I.    **FACTUAL AND PROCEDURAL BACKGROUND**

This matter comes before the Court on appeal from the United State Bankruptcy Court for the Eastern District of Louisiana. The debtor filed proceedings under Chapter 13 of the Bankruptcy Code on May 5, 2005.  His Chapter 13 plan was confirmed on July

18, 2005.  (See R. Doc. 1-3, p. 7).  The plan called for the
debtor to make total payments of $7,452, at the rate of $138.00
per month for a period of 54 months.  The payments would go to
administrative expenses, trustee's commissions, and unsecured
debts.  The total amount of allowed unsecured claims was
$13,631.47.  At the time of confirmation, McCollum's only listed
asset was his home, valued at $30,000.  The home was
unencumbered, and the debtor claimed a homestead exemption on the
property.  The value of the property and the applicability of the
exemption were not challenged before confirmation.

After confirmation of the plan, McCollum moved for
permission to sell his home for $37,000 and apply the Louisiana
homestead exemption to the first $25,000 in net proceeds from the
sale.  McCollum proposed to pay the remaining proceeds from the
sale as an accelerated lump sum payment of his remaining
obligations under the plan.  By this procedure, McCollum sought
to avoid making the 54 monthly payments called for in his plan
and to obtain an early discharge from bankruptcy.

On February 22, 2006, the bankruptcy court granted the
relief McCollum requested over the objections of the Chapter 13
Trustee.  (R. Doc. 1-2).  The Chapter 13 Trustee timely appealed
the court's February 22 order.  (R. Doc. 5, p.6).  The Trustee
argues that the bankruptcy court erred because the Louisiana

homestead exemption does not apply to proceeds from a voluntary post-petition sale of a residence by a Chapter 13 debtor.  The Trustee further argues that the bankruptcy court erred by not treating all of the proceeds from the voluntary sale of the debtor's home as disposable income, unless the debtor demonstrated that the proceeds were required as reasonable and necessary living expenses.  The Court finds no error in the bankruptcy court's decision.

## II.  DISCUSSION

### A.  Legal Standard

The standard of review for a bankruptcy appeal by a district court is the same as when a Court of Appeals reviews a district court decision.  *See* 28 U.S.C. § 158(c)(2).  Accordingly, the district court reviews the bankruptcy judge's conclusions of law and mixed questions of law and fact *de novo*.  *In re Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005) (citing *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000)).  The district court reviews the bankruptcy court's findings of fact for clear error.  *Id.*

### B.  The Homestead Exemption

The first issue in this appeal is whether a Chapter 13 debtor may claim the Louisiana homestead exemption for the first

3

$25,000.00 in proceeds from his voluntary, post-petition sale of his home.  This is a legal issue that the Court reviews *de novo*. The United States Bankruptcy Code establishes the framework governing exemptions of the debtor's property from distribution to creditors in 11 U.S.C. § 522.  Under that provision, property may be exempt in one of two ways.  Section 522 lists certain types of exempt property.  *See* 11 U.S.C. § 522(d). Alternatively, states may authorize exemptions under state law. 11 U.S.C. § 522(b).  Louisiana has opted to authorize state law exemptions instead of those provided in the Bankruptcy Code.  La. Rev. St. § 13:3881(B)(1).  Thus, the Court must look to Louisiana law to determine the applicability of a particular exemption.

When a federal court interprets a Louisiana statute, it must do so according to the principles of interpretation followed by Louisiana courts.  *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).  In Louisiana, the sources of law are legislation and custom.  *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004). These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom."

4

*Id.* (quoting La. Civ. Code art. 1*).*  In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Shaw Constructors*, 395 F.3d at 546 (quoting *Prytania Park Hotel, Ltd. v. General Star Indem. Co.*, 179 F.3d 169, 174 (5th Cir. 1999)). To make an "Erie guess" on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it.  *Shaw Constructors*, 395 F.3d at 546 (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)); *see also In re Millette*, 186 F.3d 638, 641 (5th Cir. 1999) (citing *Free v. Abbott Labs, Inc.*, 176 F.3d 298, 299 (5th Cir. 1999)) (making an "Erie guess" in the bankruptcy context).

Louisiana provides for a minimum homestead exemption of $15,000.00 in its constitution.  La. Const. Art. XII § 9. Louisiana also provides for a statutory exemption from seizure and sale of an owner-occupied residence.  La. Rev. St. § 20:1(A). The statute provides that "[t]he homestead is exempt from seizure and sale under any writ, mandate, or process whatsoever," with certain exceptions in subsections C and D.  *Id.* at § 20:1(B). The exemption applies to $25,000.00 of the value of the homestead.  *Id.*  The statute further provides, in subsection (D),

5

that "[t]he right to sell voluntarily any property that is exempt as a homestead shall be preserved, but no sale shall destroy or impair any rights of creditors thereon."  *Id.* at § 20:1(D).

The Trustee argues that Louisiana law does not expressly apply the homestead exemption to the proceeds of a voluntary sale of the homestead and that the exemption applies only so long as the property satisfies the conditions of the exemption statute. The Louisiana Supreme Court has not decided the precise issue of the applicability of the homestead exemption to proceeds of the voluntary sale of property.  In general, courts hold that exemption laws are to be given a liberal interpretation in favor of the beneficiary of the exemption.  In *Young v. Geter*, 185 La. 709, 714 (1936), for example, the Louisiana Supreme Court held that consideration of the purposes of exemptions favors an interpretation in the debtor's favor:

> In order to advance the humane purpose of preserving
> to the unfortunate debtor and his family the means of
> obtaining a livelihood and thus prevent him from
> becoming a charge upon the public, it has become an
> almost universal rule that statutes creating an
> exemption should receive a liberal construction in
> favor of the debtor.

*Id.* at 715-16.

The bankruptcy court rested its decision on the Louisiana Supreme Court's decision in *Thompson-Ritchie & Co. v. Graves*, 167 La. 1024 (1929), and the public policy behind the state exemption

6

laws.  In *Thompson-Ritchie*, a judgment creditor garnisheed the proceeds from the debtor's insurance policy on his home after the home was destroyed by fire.  *Id.* at 1026.  The creditor argued that funds realized from insurance on exempt premises were not exempt from seizure because exemption laws should be strictly construed.  *Id.* at 1026-27.  The Louisiana Supreme Court declined to take a narrow view of the exemption and held that since the debtor was entitled to the homestead exemption, "he is entitled also to the insurance money due, as it represents the homestead destroyed by fire." *Id.* at 1029-30.  Thus, the homestead exemption applied to the insurance proceeds just as it had to the home itself.  *Id.*  The court noted that "[n]ot to allow the insurance money after loss to take the place of the property destroyed, and be exempt from liability to the debts of the exemptor, would, by a mere technical evasion, pervert the object and spirit of the statutes of exemptions, always to be liberally construed in favor of the exemptor." *Id.* at 1028 (quoting *Ellis v. Pratt City*, 20 So. 649, 650 (Ala. 1896)) (internal quotation marks omitted).

As the bankruptcy court recognized, *Thompson-Ritchie* supports two conclusions.  First, the Louisiana exemption statute is not to be read literally, if a literal interpretation would defeat its salutary purpose of providing minimal subsistence

post-discharge and preventing the debtor from becoming a burden on the public.  Second, the homestead exemption may apply to proceeds as a substitute for the property itself.  It is true that *Thompson-Ritchie* involved the involuntary destruction of the exempt property instead of a voluntary sale.  This Court does not find that the distinction compels a different result.  As the bankruptcy court noted, the purpose of the $25,000 homestead exemption is not just to protect the home *qua* home, but it also protects the value of the exemption on liquidation of the asset.  Thus, the homestead is exempt from seizure and sale only up to a value of $25,000.  That value is a protected fund to provide minimal subsistence post-discharge.  There does not appear to be a good reason to deprive the debtor of the $25,000 in value based on who instigates the liquidation of the property.

The Trustee argues that La. Rev. St. § 20:1(D) expressly forbids the application of the homestead exemption to the proceeds of a voluntary sale.  As noted, that provision states that "[t]he right to sell voluntarily any property that is exempt as a homestead shall be preserved, but no sale shall destroy or impair any rights of creditors thereon."  *Id.*  The Court rejects the Trustee's argument for the same reason given by the bankruptcy court.  The bankruptcy court correctly held that subsection D preserves creditors' rights, it does not expand

them.  The creditor has the right to seize and sell the homestead, subject to the $25,000 value of the exemption. Subsection D allows the voluntary sale as long as it does not impair those rights, *i.e.*, the creditors' rights in the property itself above the $25,000 value.  Thus, this provision prevents the homeowner from using a voluntary sale to force the cancellation of an undersecured lien against the homestead.  The provision was not designed to extend creditors' rights to the first $25,000 of the homestead's value.

The Trustee's reliance on Louisiana Supreme Court authority that predates *Thompson-Ritchie* does not alter the Court's conclusion that the bankruptcy court's decision is correct.  The Trustee relies on *Schexnailder v. Fontenot*, 147 La. 467, 472-73 (1920).  In that case, the Louisiana Supreme Court addressed whether a bankruptcy discharge destroyed a prepetition judgment lien on the debtor's property.  The creditor sought to enforce the lien against the debtor's homestead.  *Id.* at 471.  The debtor asserted that his bankruptcy discharged cancelled the creditor's lien.  The debtor did not assert that the homestead exemption prevented the seizure.  The court held that the bankruptcy discharge applied to discharge the debtor's personal liability on the debt, but it did not destroy the creditor's lien on the property.  *Id.* at 473-74.

*Schexnailder* does not mean that the bankruptcy court's decision was erroneous.  The *Schexnailder* court did not address the applicability of the homestead exemption to the proceeds of a voluntary sale of the property.  Furthermore, the *Schexnailder* court's observation in *dicta* that, if the plaintiff sold the property, the homestead exemption would not prevent the creditor from seizing the property to satisfy his claim does not lead ineluctably to the conclusion that the creditor would have also been entitled to the proceeds of the sale in the hands of the debtor.  As the bankruptcy court stated, La. R.S. § 20:1(D) was designed to prevent the debtor from selling the property and effecting an involuntary cancellation of a judicial lien without full payment.[1]  That the lien would remain viable on the property itself after the voluntary sale does not answer the question of whether the debtor is entitled to retain sale proceeds in the amount of the exemption.  Thus, the *Schexnailder* decision did not decide the issue presented here.

For all of the foregoing reasons, the Court finds no error

---

[1] *Murff v. Ratcliff*, 138 So. 908 (La. App. 2d Cir. 1932), also cited by the Trustee, likewise confirmed that once a voluntary sale of the homestead occurred, the *property* was available to satisfy a creditor's judgment.  *Id.* at 909.  Again, as the bankruptcy court noted, the issue in *Murff* was the applicability of the homestead exemption to the property in question, not to the proceeds of the voluntary sale.

in the bankruptcy court's conclusion that a Chapter 13 debtor may claim the Louisiana homestead exemption for the first $25,000.00 in proceeds from his voluntary, post-petition sale of his home.

### C.  Disposable Income

The Trustee's second contention is that the bankruptcy court erred in failing to treat the proceeds from the sale of the debtor's home as disposable income.  The Trustee argues that the proceeds from the sale of the debtor's home should be distributed to the creditors as "disposable income," unless it is shown that the proceeds are reasonably necessary "for the maintenance or support of the debtor or a dependent of the debtor."  11 U.S.C. § 1325(b)(2)(A)(i).

Chapter 13 prohibits confirmation of a plan over the objection of the trustee or of the holder of an allowed unsecured claim, unless the objecting creditor is paid in full through the plan, or the plan provides that the debtor will contribute all projected disposable income for at least three years.  11 U.S.C. §§ 1325(b)(1)(b) & 1325(b)(4)(A)(i).  The bankruptcy court correctly determined that the sale proceeds were not "disposable income" under this provision.

The Bankruptcy Code does not define "income," but section 1325(b)(2) provides that the term "disposable income" means:

11

> current monthly income received by the debtor (other
> than child support payments, foster care payments, or
> disability payments for a dependent child made in
> accordance with applicable nonbankruptcy law to the
> extent reasonably necessary to be expended for such
> child) less amounts reasonably necessary to be
> expended . . . for the maintenance or support of the
> debtor or a dependent of the debtor . . . charitable
> contributions . . . and expenditures necessary for
> the continuation . . . of [a] business.

11 U.S.C. §§ 1325(b)(2) (internal formatting altered).  The

bankruptcy court reasoned that the proceeds from the sale of the

debtor's home were not income because the proceeds from the

liquidation of property are "neither regular nor given in

exchange for services or in lieu of compensation."  (R. Doc. 1-2,

p. 11).  Based on the statutory definition of "disposable

income," which refers to "monthly income," the Court finds no

error in this conclusion.  Proceeds from the sale of a home lack

the regularity inherent in the term "monthly income."

Simply because the sale proceeds are not "disposable income"

does not mean that they will not be available, to the extent they

are not exempt, to the Trustee for distribution to the creditors.

This follows because 11 U.S.C. § 1325(a)(4) also requires, for

confirmation, that the value of the payments made under a plan be

at least equal in value to the property available to the

claimants under Chapter 7.  But the property available to

claimants under Chapter 7 does not include exempt property.  *See*

11 U.S.C. § 522(b)(1).  The bankruptcy court correctly rejected the Trustee's argument as an attempt to "back door" the inclusion of exempt assets by treating them as disposable income.

The Trustee relies on *In re Gebo*, 290 B.R. 168, 170 (Bankr. M.D. Fla. 2002), to support his argument that income from the sale of property is subject to the disposable income test.  In that case, the bankruptcy court denied confirmation of a plan that excluded substantial workmen's compensation benefits, which were exempt assets, from calculation of the debtor's disposable income.  *Id.* at 169-70.  The Trustee argues that this establishes that even exempt income is disposable income.  From the court's discussion, however, it is clear that the concern was over the debtor's ability to obtain a discharge by satisfying a small portion of his debts while withholding a large exempt income stream.  *Id.*  It found that such an arrangement violates the good faith requirement of Section 1325(a)(3).  *Id.*  The Court did not hold that exempt property must be included in a plan but that its exclusion could be considered in evaluating the debtor's good faith.  In this case, the bankruptcy court carefully took into account all of the relevant factors, including the proceeds retained as exempt, in evaluating the debtor's good faith.  The decision *In re Gebo* therefore does not compel the result urged by the Trustee.

13

For all of the above-stated reasons, the Court finds no
error in the bankruptcy court's conclusion that the proceeds from
the sale of the debtor's home were not disposable income under 11
U.S.C. § 1325(b)(2).

### D.  **Early Discharge**

The trustee argues that the bankruptcy court erred by
allowing the debtor to obtain a discharge after making only six
months of payments and without paying his unsecured creditors
100% of their claims.  The Trustee asserts that the bankruptcy
court's ruling violated 11 U.S.C. §§ 1329 and 1325(b).

As the bankruptcy court noted, at the time of confirmation,
the liquidation value of the debtor's home to the claimants was
negligible.  (R. Doc. 1-2, p. 17).  This follows because the
value of the asset was only $30,000, and real estate commissions,
the Trustee's commission, other costs of the sale, and the
$25,000 value of the homestead exemption would total nearly that
amount.  The plan called for the debtor to make payments totaling
$7,452.00.  After confirmation, the debtor proposed to sell his
home for $37,000.00 and to offer the entire net proceeds above
the amount of the homestead exemption to settle his obligations
under the plan.  The debtor also proposed that, having satisfied
his prospective obligations under the plan, he be granted an

14

early discharge.  Although the Trustee objected, the bankruptcy court found that prepayment of the amounts due under the plan was in the best interests of the creditors and in good faith.  The bankruptcy court found that the proposed sale and early termination resulted in the creditors' receiving $13,104.00 on debts totaling $15,031.00.  The debtor is 68 years old and lives on a fixed disability income through Social Security.  Given that the his projected net disposable income over the life of the plan was only $7,452.00 and the debtor had already paid $1104.00 of this amount, the bankruptcy court found that the proposal provided the creditors more than the liquidation value of nonexempt assets and the present value of the payments due for the duration of the plan.

The Trustee argues that allowing the early termination amounted to a modification of the plan under 11 U.S.C. § 1329. The Trustee further argues that Chapter 13 prohibits a plan modification, over his objection, that reduces the time for payments below the three-year threshold, without paying the claims in full or devoting all of the debtor's projected disposable income to the claims for at least three years.  *See* 11 U.S.C. § 1325(b)(1)(A) (claims must be paid in full); 11 U.S.C. § 1325(b)(1)(B) (disposable income test); 11 U.S.C. § 1325(b)(4)(A)(i) (three-year period).  Thus, the Trustee asserts

15

that early termination violated the so-called "disposable income test" because the proposal would not guarantee that the debtor's disposable income would be distributed to the creditors for 36 months or that the creditors would be paid in full.  *Id.*

Section 1329 provides that a confirmed plan may be modified for various reasons, including to "extend or reduce the time for . . . payments."  11 U.S.C. § 1329(a)(2).  Under 11 U.S.C. § 1329(b)(1), the modification of any plan is subject to the requirements of Section 1325(a).  Section 1325(a) provides a list of requirements for confirmation, including that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7[2] of this title on such date."  11 U.S.C. § 1325(a)(4).  This is known as the "best interests of the creditors test."  Section 1325(a) also requires that "the plan compl[y] with the provisions of this chapter and with the other applicable provisions of this title." 11 U.S.C. § 1325(a)(1).  As noted above, the requirement that

---

[2] In a Chapter 7 bankruptcy, the debtor's non-exempt property would be offset against the claims, followed by discharge.  11 U.S.C. §§ 721-27.  Given that the value of the debtor's non-exempt assets was negligible, the creditors would have received very little in a Chapter 7 bankruptcy.

16

disposable income be devoted to the plan for at least three years falls under 11 U.S.C. § 1325(b).

The Court finds that the bankruptcy court correctly rejected the Trustee's arguments.  First, the Fifth Circuit has arguably endorsed the proposition that early termination with full payment need not be deemed a plan modification.  In *Bayshore Nat'l Bank of Laporte v. Smith*, 252 B.R. 107 (E.D. Tex. 2000), *aff'd without opinion*, 252 F.3d 1357 (5th Cir. 2001), the debtor received a gift from her family that she proposed to apply to the remaining payments under her plan in exchange for early termination.  *Id.* at 108-09.  One creditor objected, arguing that early discharge meant that the creditors would not receive all of the debtor's disposable income for the 36-month minimum period under 11 U.S.C. § 1325(b).  The district court affirmed the bankruptcy court's approval of the proposal and its finding that the proposal did not constitute a modification of the plan because the debtor would satisfy her obligations under the plan on an undiscounted, accelerated basis.  *Bayshore Nat'l Bank*, 237 B.R. 621, 625-26 (Bankr. E.D. Tex. 1999); 252 B.R. at 109-10.  The court relied on 11 U.S.C. § 1328(a), which provides that a Chapter 13 debtor is entitled to a discharge as soon as practicable after the debtor completes all payments due under the plan.  It reasoned that this statute did not forbid using a lump sum to complete payments due

17

under the plan.  The court said it was the *amount* of the payments
under the plan, not the *number* of payments that was the relevant
inquiry as to whether the payment requirement was satisfied.  *Id.*
The court further noted that, given the time value of money,
early repayment usually benefitted creditors, compared with the
terms of the plan.  *Id.* at 110.  The Fifth Circuit Court of
Appeals affirmed the case without opinion.  *Bayshore Nat'l Bank
of LaPorte v. Smith*, 252 F.3d 1357 (5th Cir. 2001).  Its
affirmance was an implicit endorsement of the principle that
early discharge upon accelerated payment of the full amount due
under the plan does not constitute a modification of a confirmed
plan, and that such early termination is not therefore subject to
the requirements of 11 U.S.C. § 1329.  *See also In re Murphy*, 327
B.R. 760 (Bankr. E.D. Va. 2005); *In re Bergolla,* 232 B.R. 515
(Bankr. S.D. Fla. 1999).

     This case is similar to *Bayshore Nat'l Bank*.  By selling his
exempt asset, the debtor was able to fulfil his obligations under
the plan, early, and to provide extra payment to the creditors.
In this sense, the early termination did not constitute a
modification of the plan because the debtor simply accelerated
the payment of the amount due under the plan.  Further, the
bankruptcy court observed that the debtor is on a fixed income
derived from Social Security and that the Trustee presented no

evidence that his disposable income would increase relative to his necessary living expenses.  (R. Doc. 1-2, p. 21).  Thus, there was no threat that the debtor would receive additional disposable income during the 36-month period that, theoretically, should have been available to the creditors.  Meanwhile, the bankruptcy judge's choices were to approve the sale and allow the creditors to receive $13,104.00 immediately, or to prohibit the sale and have the creditors receive the remaining $6,348.00 over the remaining years of the plan.  The bankruptcy judge chose the option that was in the best interests of the debtor and the creditors.  The Court finds that the bankruptcy judge was correct in concluding that the proposal for early termination did not constitute a plan modification under Section 1329.

The bankruptcy court was also correct in determining that, if a proposed early discharge does constitute a modification under Section 1329, the circumstances of this case meet the requirements of that section.  When a debtor seeks to modify a confirmed plan to reduce the time required to make payments, Section 1329(b)(1) provides that the requirements of Section 1325(a) apply to the modification.  Section 1325(a) includes the "best interests of the creditors" test but not the disposable income test, which is included in Section 1325(b).  The Trustee argues that the provisions of Section 1325(b) are incorporated by

reference in Section 1325(a).  This argument is unpersuasive.
Section 1329(b)(1) explicitly provides that, along with Section
1325(a), Sections 1322(a) and (b) apply to post-confirmation
modifications.  It is unlikely that Congress chose to list
specific subsections of the Code that would be applicable to
post-confirmation modifications but chose to omit Section 1325(b)
because it is incorporated by reference in another section.
Thus, the plain meaning of the statute supports the bankruptcy
court's conclusion that, even if early termination constituted a
plan modification, such modification was not subject to the
disposable income test.  *See In re Golek*, 308 B.R. 332 (Bankr.
N.D. Ill. 2004); *In re Sounakhene*, 249 B.R. 801 (Bankr. S.D. Cal.
2000).

Furthermore, the Court can find, and the Trustee has cited,
no case from this circuit that establishes that the disposable
income test applies to plan modifications under Section 1329.  To
the extent that the Trustee relies on out-of-circuit cases for
this proposition, those cases are neither binding nor persuasive.

For all of the foregoing reasons, the Court finds no error
in the bankruptcy court's determination that early discharge of
the debtor upon lump sum payment of his obligations under the
plan did not constitute a plan modification.  The Court further
affirms the bankruptcy court's finding that, even should the

20

early discharge constitute a modification, the terms of the discharge were in the best interests of the creditors and did not implicate the disposable income test.

## III. CONCLUSION

For the reasons stated above, the Court AFFIRMS the Bankruptcy Judge's February 22, 2006 order.

New Orleans, Louisiana, this __22nd__ day of February, 2007.

_____
                SARAH S. VANCE
        UNITED STATES DISTRICT JUDGE

21